[No. D060346. Fourth Dist., Div. One. Dec. 19, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL RAYMOND BAUER, Defendant and Appellant.

COUNSEL

Robert Booher for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HALLER, J.**—Michael Raymond Bauer appeals from orders revoking his probation and imposing a six-year prison sentence as a result of his earlier guilty plea to a charge of lewd and lascivious conduct with a child under 14 years old. Bauer contends he was denied his right to counsel at the probation revocation and deferred sentencing hearings. We conclude the trial court erred in failing to inform Bauer of his right to counsel at these hearings and to obtain a knowing waiver of this right. We determine the error requires a reversal of the probation revocation and sentencing orders, conditioned on Bauer exercising his right to counsel on remand.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2009, Bauer put his hands down the pants of a seven-year-old boy and touched the boy's penis. This incident occurred in the bathroom of a fast-food restaurant. Shortly after, Bauer was arrested and charged with one count of lewd and lascivious conduct. (Pen. Code,[1] § 288, subd. (a).)

On December 17, 2009, Bauer initialed and signed a form requesting to represent himself on the charges brought against him, and acknowledging he was aware of his right to counsel and the dangers of self-representation. (See *People v. Lopez* (1977) 71 Cal.App.3d 568, 571 [138 Cal.Rptr. 36].) At a hearing on the same date, the court orally informed Bauer of his right to counsel and explained the disadvantages associated with self-representation. Bauer said he understood each of the court's admonitions and elected to represent himself.

One year later, on December 21, 2010, Bauer entered a guilty plea to the section 288, subdivision (a) offense pursuant to a plea agreement in which he represented himself. The court suspended imposition of sentence for five years, and placed Bauer on five years' formal probation with certain conditions, including not associating with minors and "[not] be[ing] in places where minors congregate, unless with an adult approved by the probation officer." Bauer was also required to register as a sex offender. At the conclusion of the hearing, Bauer was released from custody.

About six weeks later, on about February 2, 2011, Bauer was arrested for allegedly violating his probation. Six days later, the court (Judge Roderick Shelton) held an arraignment hearing on the probation violation charges, which the prosecutor stated was that Bauer "absconded from probation." Bauer represented himself at the hearing, and there is no showing he was

---

[1] Further statutory references are to the Penal Code.

advised of his right to counsel. When the court asked Bauer whether he wanted to admit or deny the charge, Bauer responded that he had understood from his probation officer and the "paperwork" that he would have the opportunity to argue at the hearing why probation should not be revoked, and asked "what would be the result" of his admission or denial. The court responded that "[i]f you admit I will set it for sentencing after revocation" and "[i]f you deny I'll set it for evidentiary hearing." When Bauer did not respond with a denial or admission, the court entered a denial on Bauer's behalf. Bauer objected, stating that the court was "violating my rights since I am pro per." The court then concluded the hearing.

One month later, on March 7, the court (Judge Stephanie Sontag) held the probation revocation hearing. At the outset of the hearing, the prosecutor stated that the alleged probation violations were: (1) "absconded probation" and (2) "contact with a minor." The evidence at the hearing showed that on February 1 (about six weeks after Bauer was placed on probation), Bauer went to the Escondido Police Department to register as a sex offender. While he was there, Bauer told one of the detectives that he planned to have contact with a homeless family including an eight-year-old boy and wanted to know whether that would violate his probation conditions. The detective then called Bauer's probation officer, Kirk Palmer, who spoke on the phone with Bauer. Palmer told Bauer that his probation conditions prohibited contact with minors and, when Bauer challenged this statement, Palmer told Bauer that he was required to comply with his probation officer's directions. Palmer told Bauer to report to his office the next morning, but Bauer said he could not do that because he was a student and was disabled. Shortly after, Bauer left the police department without completing his sex offender registration process. About an hour later, Bauer telephoned Palmer and said he was going to kill himself. Shortly after, Bauer was arrested.

At the probation revocation hearing, Bauer's probation officer (Palmer) testified to the circumstances summarized above. Palmer also said that after he arrested Bauer, Bauer admitted that he had had contact with a homeless minor on "four or five occasions." In a tape recording played for the court, Bauer admitted to "roughhousing" with the minor.

In his testimony, Bauer acknowledged that he had had contact with a child of a homeless family, but said he was helping members of this family who were receiving services from the same homeless agency that was providing assistance to Bauer. Bauer argued that his contact with the minor should not be considered a probation violation because the contact occurred in a "public place," the contact was "by accident," and "it was a common case of forgetfulness."

After the hearing, the court found there was sufficient evidence to show that Bauer had physical contact with a minor and this contact violated the probation condition prohibiting contact with minors. However, the court found the evidence was insufficient to support the "absconding" probation violation allegation. The court then ordered a 90-day evaluation under section 1203.03 and continued the sentencing portion of the hearing.   .

Three months later, on June 17, the court held the sentencing hearing. Bauer represented himself and there is nothing on the record showing he was told of his right to appointed counsel or given admonishments about the dangers of self-representation. At the outset of the hearing, the court denied Bauer's motion to continue. After permitting extensive argument, the court denied Bauer's request for probation and sentenced him to the middle term of six years in state prison.

## DISCUSSION

Bauer contends the court erred by failing to inform him of his right to counsel at the probation revocation and deferred sentencing hearings. We conclude this contention has merit and conditionally reverse the judgment.

I.   *Right to Counsel at Probation Revocation/Deferred Sentencing Hearings*

The federal constitutional right to counsel "applies at all critical stages of a criminal proceeding in which the substantial rights of a defendant are at stake." (*People v. Crayton* (2002) 28 Cal.4th 346, 362 [121 Cal.Rptr.2d 580, 48 P.3d 1136] (*Crayton*); see *Mempa v. Rhay* (1967) 389 U.S. 128, 134 [19 L.Ed.2d 336, 88 S.Ct. 254].) A sentencing hearing is one such stage, and a defendant has a constitutional right to counsel at sentencing "even when it is accomplished as part of a subsequent probation revocation proceeding." (*Gagnon v. Scarpelli* (1973) 411 U.S. 778, 781 [36 L.Ed.2d 656, 93 S.Ct. 1756], (*Gagnon*); *People v. Hall* (1990) 218 Cal.App.3d 1102, 1105–1106 [267 Cal.Rptr. 494] (*Hall*).) This constitutional right to counsel encompasses the right to be informed of the right and of the "dangers and disadvantages of self-representation." (*Faretta v. California* (1975) 422 U.S. 806, 835 [45 L.Ed.2d 562, 95 S.Ct. 2525] (*Faretta*); see *Crayton, supra,* 28 Cal.4th at p. 362; *Hall, supra,* 218 Cal.App.3d at p. 1105.) A waiver of the right to counsel must be knowing and intelligent. (*Crayton, supra,* 28 Cal.4th at p. 362.)

Although a defendant has a federal constitutional right to counsel at a sentencing hearing held after a probation revocation, the United States

Supreme Court declined to establish an "inflexible constitutional rule" requiring counsel at every predicate probation revocation hearing, and instead stated that a due process right to counsel applies on a "case-by-case basis." (*Gagnon, supra,* 411 U.S. at p. 790.) However, the California Supreme Court has adopted a judicial rule of criminal procedure providing that defendants have the right to be represented by counsel " 'at all [probation] revocation proceedings,' " except in summary revocation proceedings where the defendant has absconded. (*In re Reno* (2012) 55 Cal.4th 428, 515, fn. 39 [146 Cal.Rptr.3d 297, 283 P.3d 1181], quoting *People v. Vickers* (1972) 8 Cal.3d 451, 461 [105 Cal.Rptr. 305, 503 P.2d 1313].) ■ The California Supreme Court prescribes " 'judicial rules of criminal procedure when necessary to effectuate a fundamental constitutional principle or a specific constitutional protection of individual liberty.' "[2] (*In re Reno, supra,* at p. 516, fn. 39, quoting *Stone v. Superior Court* (1982) 31 Cal.3d 503, 519, fn. 9 [183 Cal.Rptr. 647, 646 P.2d 809].)

The Attorney General does not dispute the general principle that under California law an indigent criminal defendant has the right to appointed counsel at a probation revocation hearing and a constitutional right to counsel at a deferred (postprobation revocation) sentencing hearing, and that the defendant must be properly informed of these rights. There is nothing in the record showing Bauer was advised of the right to counsel before his probation revocation hearing or deferred sentencing hearing, or that he knowingly waived these rights. The Attorney General nonetheless argues that Bauer was adequately advised of these rights when the court informed him of his right to counsel before he pled guilty to the section 288 charge.

In support, the Attorney General relies on *Crayton, supra,* 28 Cal.4th 346. In *Crayton* (a case that arose before California's superior court/municipal court unification), the felony defendant was fully advised at the municipal court stage of the criminal proceeding of his right to counsel throughout the proceedings (*including the trial*) and the defendant responded by expressly waiving counsel both at the preliminary hearing and at trial. (*Id.* at pp. 352–358.) On appeal, the defendant argued his constitutional right to counsel was violated because he was not *readvised* of the right to counsel

---

[2] This California rule providing the right to counsel at probation revocation hearings is consistent with the principle that the due process clause imposes procedural and substantive limits on the revocation of the conditional liberty created by probation. (See *Black v. Romano* (1985) 471 U.S. 606, 610 [85 L.Ed.2d 636, 105 S.Ct. 2254]; *People v. Arreola* (1994) 7 Cal.4th 1144, 1152–1153 [31 Cal.Rptr.2d 631, 875 P.2d 736]; *People v. Quarterman* (2012) 202 Cal.App.4th 1280, 1294 [136 Cal.Rptr.3d 419].) Due process requires a probationer be given "written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; and a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation." (*Black v. Romano, supra,* 471 U.S. at p. 612.)

when he was arraigned in the superior court in the same case. Rejecting this argument, the *Crayton* court held the defendant did not have a constitutional right to be *readvised* because "[f]ederal authority holds that once a defendant gives a valid waiver, it continues *through the duration of the [criminal] proceedings* unless it is withdrawn or is limited to a particular phase of the case." (*Id.* at p. 362, italics added.) The *Crayton* court noted that the municipal court and superior court phases were both part of the same criminal proceeding. (*Id.* at pp. 362–363.)

But the *Crayton* court recognized the defendant's *statutory rights* were violated by the lack of a readvisement because a state statute (§ 987, subd. (a)) required the court to inform the defendant of his right to counsel and obtain a waiver of that right when the defendant was arraigned in the superior court, even if he had been previously advised of this right. (*Crayton, supra*, 28 Cal.4th at pp. 359–361.) The high court held the "reasonable probability" harmless error standard applied to this statutory error. (*Id.* at p. 364; see *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Under this standard, the *Crayton* court found no prejudicial error because "the advisements that defendant received at the outset of the proceedings *explicitly informed* defendant of his right to counsel at all stages of the proceedings, *including trial, and warned him of the risks of representing himself at trial*. Although the court apprised defendant repeatedly of the risks of self-representation, defendant's desire to represent himself was unwavering throughout the proceedings. In light of the entire record . . . , there can be no doubt that defendant was aware of his right to appointed counsel at all stages of the proceedings and knowingly and voluntarily waived that right . . . ." (*Crayton, supra*, at pp. 365–366, citation omitted, italics added.)

■ Under *Crayton*, a trial court does not have the obligation to readvise the defendant of the right to counsel at each hearing or each stage of the same criminal proceeding, absent a specific statute requiring readvisement. (*Crayton, supra*, 28 Cal.4th at pp. 359–363; *People v. Goodwillie* (2007) 147 Cal.App.4th 695, 723 [54 Cal.Rptr.3d 601].) However, this principle is not controlling here because a probation revocation/deferred sentencing hearing is not merely a continuation of the same criminal proceeding. (See *Gagnon, supra*, 411 U.S. at p. 782 ["Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty."]; *Hall, supra*, 218 Cal.App.3d at pp. 1106–1108.) As this court recently recognized, even if a probation revocation hearing can be viewed as "technically part of the original criminal proceeding, *it is distinct in substance*." (*People v. Goodwillie, supra*, 147 Cal.App.4th at p. 723, italics added.)

Recognizing the separate character of a probation revocation hearing and the constitutional right to counsel at a deferred sentencing hearing, more than

20 years ago a California Court of Appeal reversed probation revocation/ deferred sentencing orders under circumstances similar to those here. (*Hall, supra*, 218 Cal.App.3d 1102.) In *Hall*, the defendant waived his right to counsel after being given "extensive" advisements, including proper *Faretta* warnings, before trial. (*Id.* at p. 1104.) At the conclusion of the trial, the jury found the defendant guilty of the charged offense. As here, the trial court suspended imposition of sentence and placed him on probation. (*Ibid.*) More than two years later, the court held a combined probation revocation and sentencing hearing, at which the defendant represented himself. The court revoked the probation and imposed a four-year prison sentence. (*Ibid.*)

The *Hall* court held the trial court erred in not advising the defendant of his right to counsel *before the combined probation revocation/deferred sentencing hearing.* (*Hall, supra*, 218 Cal.App.3d at pp. 1105–1108.) The court rejected the Attorney General's argument "that the *Faretta* hearing . . . held before trial . . . satisfies the *Faretta* requirements for the subsequent probation revocation and sentencing hearing." (*Id.* at p. 1106.) Declining to "elevate form over substance," the court stated that due process requires a knowing waiver of the right to counsel at the deferred sentencing stage, and this right is not satisfied by speculation that the defendant might have known of the right based on information provided "at an earlier and in some respects *unrelated segment* of the prosecution." (*Id.* at pp. 1108, 1106, italics added.)

The *Hall* court explained: "If we were to adopt [the Attorney General's] position it would lead to the clearly anomalous result of requiring a *Faretta* warning for those represented by counsel at trial while denying such a warning to those who represented themselves. However, it is precisely those defendants who have acted without the benefit of counsel during the trial proceedings who are most likely to be in need of the warning. It is far more probable that they will have little or no understanding that (1) they are entitled to have counsel represent them at the probation revocation hearing, (2) their pretrial decision to act in propria persona may be changed for such subsequent hearing or (3) the probation revocation hearing can have a substantial effect on their substantive rights and can result in consequences far more serious than might otherwise be anticipated from the nature of the alleged conduct which generated the revocation proceedings." (*Hall, supra*, 218 Cal.App.3d at pp. 1106–1107.)

Quoting the California Supreme Court, the *Hall* court additionally observed that a defendant's realization of the "risks of self-representation at trial provides no assurance that he understands the issues, complexities and pitfalls potentially awaiting him at some future probation revocation hearing. 'The violation of a condition of probation is often a matter of degree or quality of conduct, and the point where a violation occurs often is a matter of technical

judgment. . . . However, [the criminal defendant] too often lacks the training and poise to present to either his probation officer or the court his explanation in a persuasive manner, although or perhaps because the stakes are high. Trained counsel, in such circumstances, "can help delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination, and generally safeguard the interests of" his client.' " (*Hall, supra*, 218 Cal.App.3d at p. 1107, fn. 6, quoting *People v. Vickers, supra*, 8 Cal.3d at p. 461, citation omitted.)

In a pre-*Faretta* and pre-*Gagnon* case, the California Supreme Court similarly held that the trial court erred by failing to advise the defendant of her right to counsel at a probation revocation/deferred sentencing hearing. (*In re Turrieta* (1960) 54 Cal.2d 816, 818–820 [8 Cal.Rptr. 737, 356 P.2d 681].) The *Turrieta* court stated that the advice given at trial two years earlier "while technically in the same proceeding, was disassociated in time *and* the specific act for which this petitioner was before the court, at least in her own mind. *If she remembered at all that she had been advised of her right in earlier proceedings, certainly she must have been confused as to whether she was then entitled to counsel [at the probation revocation hearing]. That right would indeed be without real substance if we were to hold that it had been properly made available to her.*" (*Id.* at p. 820, italics added.)

As in *Hall* and *Turrieta*, there is nothing in the record before us showing the defendant was told or otherwise knew of his right to counsel at the probation revocation and deferred sentencing hearings. To the contrary, Bauer made several statements indicating that he did not understand the nature and consequences of the probation revocation hearing and the deferred sentencing portion of the hearing. Information about his right to counsel and warnings about self-representation could have alerted him to the potentially serious consequences of a court's determination that he had violated even a single probation condition.

The Attorney General argues that *Hall* and *Turrieta* are distinguishable because in those cases there was a significant passage of time between the initial grant of probation and the revocation hearing (about two years), whereas in this case, the probation revocation hearing was held only about two or three months after Bauer pled guilty. However, the probation revocation and sentencing hearings occurred more than one year after Bauer was admonished as to his right to counsel in the original proceeding. Moreover, these courts did not ground their holdings solely, or even primarily, on the timing of the hearings. Both courts recognized the functional difference between the original criminal proceeding and the probation revocation/ deferred sentencing hearing, and the *Hall* court specifically found that given this difference the earlier admonishment would not necessarily advise a defendant of the right to counsel at the latter hearing.

■ We agree with this reasoning as applied to the facts of this case. As compared to the initial criminal proceeding, the charges in the probation revocation proceeding and sentencing hearing were different and there was much less formality in the latter proceedings. Although a probation revocation hearing is an important hearing at which the defendant's liberty is at issue, the hearing is "more flexible and less formal than a criminal trial" and there is no right to a jury. (*People v. Quarterman, supra,* 202 Cal.App.4th at p. 1294.) Under these circumstances, it would not be unreasonable for a criminal defendant to believe that a probation revocation/deferred sentencing hearing is more in the nature of an administrative process where the right to counsel does not attach. On the record before us, we cannot reasonably assume Bauer would have understood his earlier right to counsel extended to the probation revocation and deferred sentencing hearings.

Equally significant, unlike in *Crayton,* the record does not show Bauer was in fact advised in the earlier proceedings that he had the right to counsel in the subsequent proceedings at issue. In discussing the constitutional issues, the *Crayton* court devoted substantial portions of its opinion to quote from and highlight the record showing that during the municipal court hearing the court specifically and expressly advised the defendant of his right to counsel *at the trial* to be held in superior court. (*Crayton, supra,* 28 Cal.4th at pp. 350, 352–357, 363, 365–366.) Based on these facts, the California Supreme Court distinguished *Hall* and *People v. Sohrab* (1997) 59 Cal.App.4th 89 [68 Cal.Rptr.2d 749], explaining that "[u]nlike [in *Sohrab* and *Hall*], the instant matter involves a defendant who *was* clearly and fully admonished of the risks involved in representing himself at both the preliminary hearing and trial stages and who nonetheless elected to represent himself throughout the proceedings . . . ." (*Crayton, supra,* at p. 363, italics added.) Here, as in *Hall,* there was nothing in the record showing Bauer had been earlier admonished of his right to counsel at a probation revocation/deferred sentencing hearing and the disadvantages of representing himself at these hearings.

## II. *Error Requires Reversal*

Bauer contends the court's error in failing to advise him of his right to counsel at the probation revocation/sentencing hearings is reversible per se.

In *Hall,* the court held that reversal is required "[i]f, at a deferred sentencing hearing where the defendant represents himself or herself, there is a complete absence of a waiver of the right to counsel and of any self-representation warnings." (*Hall, supra,* 218 Cal.App.3d at pp. 1108–1109.) The court reasoned that at a deferred sentencing hearing a defendant has a constitutional right to counsel and where the defendant is deprived of this right because he is unaware of the right, the error necessarily renders the

proceedings " 'fundamentally unfair.' " (*Id.* at p. 1108; see *People v. Cahill* (1993) 5 Cal.4th 478, 500 [20 Cal.Rptr.2d 582, 853 P.2d 1037].)

Under *Hall*'s analysis, the error here requires us to reverse the challenged orders because the record does not show Bauer was informed of his constitutional right to counsel at the deferred sentencing hearing where he faced a significant loss of liberty.

We need not decide whether we agree with *Hall*'s reversible per se error standard, because even if we were to apply a harmless error standard, we would conclude the error was prejudicial. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]; *People v. Watson, supra,* 46 Cal.2d at p. 836.) The Attorney General has not directed us to, nor have we independently found, any facts in the record supporting a reasonable inference that Bauer was aware of the right to be represented by appointed counsel or that he would not have accepted the appointment of counsel had the court made him aware of this right. Although Bauer appeared to be articulate and relatively skilled in pursuing his legal rights, these facts do not show Bauer understood or should have understood he had the right to appointed counsel at the probation revocation/deferred sentencing hearings.

In reaching this conclusion, we are aware—based in part on Bauer's letters written directly to this court—that Bauer may prefer self-representation to representation by legal counsel. Thus, we cannot be certain that upon remand Bauer will choose to be represented by counsel at the new probation revocation/sentencing hearings. Because there would be no purpose served in holding a second probation revocation/sentencing hearing if Bauer again seeks to represent himself, we shall reverse the probation revocation/sentencing orders conditioned on Bauer's election to be represented by counsel.

## DISPOSITION

The judgment is conditionally reversed, and the cause is remanded to the trial court with directions to hold a hearing to determine whether Bauer wishes to waive his right to counsel at his probation revocation and sentencing hearings after proper admonishments and waivers. If, after being properly admonished, Bauer waives his right to counsel (either at the outset of the hearings or during the hearings), the court shall reimpose the order revoking

his probation and imposing the six-year sentence. In this event, the judgment shall be reinstated, and we shall affirm the judgment. If Bauer exercises his right to counsel, our reversal will stand and the court shall hold new probation revocation and sentencing hearings.

Benke, Acting P. J., and Aaron, J., concurred.